UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Cook Biotech Incorporated ) | |
| and Purdue Research Foundation, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 4:03-CV-0046 |
| ) | |
| ACell, Incorporated, ) | |
| Stephen F. Badylak, and ) | |
| Alan R. Spievack ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM, OPINION, AND ORDER**

Before this Court is Defendants', ACell, Incorporated ("ACell"), Stephen F. Badylak ("Badylak"), and Alan R. Spievack ("Spievack"), Motion for Summary Judgment on Counts V (Conversion) and VI (Replevin) against Plaintiffs, Cook Biotech Incorporated ("Cook Biotech") and Purdue Research Foundation ("PRF"). This Court also has before it Plaintiffs' Cook Biotech and PRF's Partial Motion for Summary Judgement of Conversion against Defendants ACell and Badylak. Plaintiffs have alleged that ACell and Badylak have converted documents that rightfully belong to Cook Biotech and documents that rightfully belong to PRF. Additionally, Plaintiffs assert that these documents, namely six binders containing proprietary documents, are presently in the possession and control of Defendants' counsel who has refused to return them to Plaintiffs. Plaintiffs request that this Court retain as an issue for trial the appropriate remedy for such conversion.

Defendants ACell, Badylak, and Spievack have filed a cross-motion for Summary Judgment on the Conversion and Replevin counts, asserting instead that Plaintiffs have failed to show (1) the required pecuniary harm; (2) the requisite mens rea for the conversion claim, (3)

that the property was wrongfully acquired or unlawfully held or (4) that PRF, as opposed to Purdue University, is the putative owner of any of the items subject to these claims.   The parties have fully briefed the issues before the Court.  For the reasons stated below, the Defendant's Motion for Summary Judgment on Counts V (Conversion) and VI (Replevin) is **GRANTED**, and Plaintiffs' Partial Motion for Summary Judgment on Conversion is **DENIED**.

## Factual Background

Cook Biotech alleges that Defendants currently possess six binders, each of which is labeled as "Cook Biotech Confidential" or as containing "Cook Biotech" research meeting minutes.  These binders allegedly contain original documents describing information belonging to Cook Biotech Incorporated.  ("HAR Series Cook Biotech documents").

In 1995 and again in 2003, PRF, as owner of certain patents and patent applications on which Badylak was a named inventor, licensed to Cook Biotech not only the subject inventions but also certain "Licensed Technology" embodied in Badylak's research documents relating to those licensed inventions. Defendants currently have under their control documents describing and other data embodying that Licensed Technology and other research performed by or under the supervision of Defendant Badylak at Purdue University and patent application and prosecution materials relating to processed collagenous extracellular matrix materials derived from porcine urinary bladder tissue ("HAR Series PRF documents").

These documents ("HAR Series Documents" or "HAR documents") were formerly located in Defendant Badylak's office at Purdue University ("Purdue").  The HAR documents are presently retained at the law firm of Defendants' counsel, Harrison & Moberly in Indianapolis.  Prior to their transfer to Harrison & Moberly, the HAR documents were located at

2

ACell in Lafayette, Indiana.

The HAR documents purportedly contain Cook Biotech research proposals relating to extracellular matrix technology, meeting minutes of Cook Biotech-sponsored research groups, and minutes of the Tissue Engineering Research Advisory Committee ("TERAC") meetings, as well as research information that ACell tried unsuccessfully to license from PRF.  Cook Biotech required the investigators conducting research on its behalf, including Badylak, to sign non-disclosure agreements to protect confidential and proprietary Cook Biotech information.  Badylak signed such an agreement on June 6, 1995.  Plaintiff's Memorandum in Opposition ("Pl. Mem. in Opp.") Ex. 5.

Approximately six months prior to Badylak's departure from Purdue, he became President of ACell Incorporated.

When Badylak left Purdue for the University of Pittsburgh, he selected documents from his Purdue office to take with him.  Purdue staff boxed up the remaining materials and asked Badylak to come pick up the boxes.  Sherry Ziobro, ACell's Vice President of Production, went to Purdue and picked up the boxes.  Defendants later transported the boxes of Badylak's office materials from ACell to the law offices of Harrison & Moberly for Plaintiff's inspection and copying.  Cook Biotech thereafter demanded that ACell return the six binders.  ACell has refused to return the HAR series documents to Cook Biotech or Cook Biotech's counsel.  Likewise, counsel for PRF demanded that ACell return HAR Series PRF documents.  ACell has refused to return those documents.

**Standard of Review**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)*;  Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir. 1998).  *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor.  *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir. 1998), *reh'g denied*.  A question of material fact is a question which will be outcome determinative of an issue in the case.  The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue.  *Anderson*, 477 U.S. at 248.  Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Id.*  The nonmoving party cannot rest on its pleadings, *Weicherding v. Riefel,* 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920-21 (7th Cir. 1994); nor may that party rely upon conclusory allegations in affidavits.  *Smith v. Shawnee Library* Sys., 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Bombard v. Fort*

4

*Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996).  However, the plaintiff must do more than raise a "metaphysical doubt" as to the material facts.  *Matsushita*, 475 U.S. at 577; 106 S. Ct. at 1351.  Rather, he must come forward with "specific facts" showing that there is a genuine issue for trial.  *Id.* at 587 (*quoting* FED. R. CIV. P. 56(e)).  Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue.  *Anderson*, 477 U.S. at 252-55.  Applying the above standard, this Court will now address the present motions for summary judgment in conjunction with each other.

**Analysis**

Plaintiffs filed a civil claim for conversion under Indiana Code § 35-43-4-3 of the Indiana crime victim's relief statute, Indiana Code § 34-24-3-1.  Plaintiffs allege that Defendant failed to return a set of documents, some of which belong to Cook Biotech and some of which belong to PRF.  These binders allegedly contained some information that was confidential, contained trade secrets, and was used by Badylak to assist PRF (on Cook Biotech's behalf) in the prosecution of patent applications relating to processed collagenous extracellular matrix materials derived from porcine urinary bladder tissue.  Plaintiffs assert that when Badylak departed from Purdue University he wrongly, without Plaintiffs' knowledge or consent, gave the property to Defendant ACell.  These binders are currently in Defendants' counsel's possession and have not been returned to Plaintiffs.  The parties have filed cross motions for summary judgement on this issue.

Criminal conversion is committed when "[a] person...knowingly or intentionally exerts unauthorized control over property of another person."  Ind. Code. § 35-43-4-3.  A person suffering pecuniary loss as a victim of criminal conversion can sue for costs of the action, attorneys fees, and treble damages.  Ind. Code. § 34-24-3-1.  Unlike in a criminal trial, the

"claimant need only prove by a preponderance of the evidence that the criminal act was committed by the defendant." *Gilliana v. Paniaguas,* 708 N.E.2d 895, 899 (Ind.Ct.App. 1999). *See also Squires v. Utility/Trailers of Indianapolis, Inc.*, 686 N.E.2d 416, 420 (Ind.Ct.App. 1997). And recovery on this theory in a civil action does not require a criminal conviction as a prerequisite to recovery. *Huff v. Biomet, Inc.*, 654 N.E.2d 830, 835 (Ind.Ct App. 1995). All elements of the alleged criminal act, however, must be proven by the claimant. *Id*.

To satisfy the prima facie burden in a conversion claim, the claimant must prove two elements. First, the claimant must show that the control exercised over the property was unauthorized. *Midland-Guardian Co. v. United Consumers Club, Inc.*, 499 N.E.2d 792, 797 (Ind.Ct.App. 1986); *Agristor Leasing v. McIntyre*, 150 F.R.D. 150, 151 (S.D.Ind. 1993). Exerting control over property, for purposes of Indiana Code § 35-41-2-2, means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property.

Second, the claimant must show that the accused "was aware of a high probability that this control was unauthorized." *Midland-Guardian*, 499 N.E.2d at 798. *See also Agristor*, 150 F.R.D. at 151. Indiana Code § 35-43-4-1(b) provides, "a person's control over property of another person is 'unauthorized' if it is exerted...without the other person's consent..." *See also Greco v. KMA Auto Exchange, Inc.*, 765 N.E.2d 140, 147 (Ind.Ct.App. 2002).

Criminal intent is an essential element that must be proven in any criminal conversion action. *Summit Account and Computer Service, Inc. v. RHJ of Florida, Inc.*, 690 N.E.2d 723, 727 (Ind.Ct.App. 1998). This mens rea requirement is what "differentiates criminal conversion from the more innocent breach of contract or failure to pay a debt situation that the criminal

6

conversion statute was not intended to cover." *Sam and Mac, Inc., v. Treat*, 783 N.E.2d 760, 765 (Ind.Ct.App. 2003). *See also Gilliana*, 708 N.E.2d at 899. Indiana's criminal conversion statute includes two levels of criminal intent, "knowingly" or "intentionally," and proof of either will sustain a conviction for conversion. A person is culpable, in terms of criminal liability, for intentional conduct if, "when he engages in the conduct, it is his conscious objective to do so." Indiana Code § 35-41-2-2. "Knowingly" is the lesser level of intent, and a person engages in conduct "knowingly" if he is aware of a high probability that he is doing so." Indiana Code § 35-41-2-2. *See also Gilliana v. Paniaguas*, 708 N.E.2d 895, 899 (Ind.Ct.App. 1999).

Thus, in order to find a criminal conversion in this case, the evidence, at a minimum, must support the conclusion not only that Defendants exerted unauthorized control over Plaintiffs' property, but also that Defendants were aware of a high probability that this control was unauthorized.

### *Pecuniary Harm*

To succeed on an action for conversion a plaintiff must show that he "suffered a pecuniary loss." Ind. Code § 34-24-3-1. To satisfy this requirement, Plaintiffs offer only the affidavits or Ms. Trana and Mr. Bleyer estimating that the value of the documents is between $1 and $20 million. *See* Plaintiff's Motion for Summ. Jud. Ex. 13, Trana Decl. At 3; Ex. 14, Bleyer Decl., at 3. It is well settled that the mere conclusory statements in an affidavit of a plaintiff are insufficient to avoid summary judgment. *Cooper-Schut v. Visteon Automotive Systems*, 361 F.3d 421, 429 (7th Cir. 2004). The affidavits submitted by plaintiffs in connection with their replevin claim do not even allege any damages stemming from their loss of control and possession of the documents. In fact, it is clear that Purdue copied all of the documents before they were given to

7

Dr. Badylak, in turn giving them access to all of the information contained therein.  Therefore, Plaintiffs have failed to make the required showing of pecuniary harm.

*Unauthorized Control Over Plaintiffs' Property*

As noted above, Indiana Code § 35-43-4-1(b) provides, "a person's control over property *of another person* is 'unauthorized' if it is exerted...without the other person's consent..." (emphasis added).  *See also Greco v. KMA Auto Exchange, Inc.*, 765 N.E.2d 140, 147 (Ind.Ct.App. 2002).

It is clear that the control exerted by Badylak over the documents was authorized.  It is not disputed that he initially took the documents with plaintiff's consent.  Pl. Mem. in Opposition at 1-2, 7 ("With Plaintiff's consent, [Dr. Badylak] possessed the property to conduct research at Purdue University . . ., to perform research on Cook Biotech's behalf, and to assist PRF in the prosecution of patent applications relating to processed collagenous extracellular matrix materials."; "There is no dispute that [Dr.] Badylak had permission to remove the subject documents from Purdue in October 2002."; "Purdue staff boxed up [the documents] and asked Badylak to come pick up the boxes.").

Plaintiffs contend, however, that the unauthorized control occurred when Badylak relinquished the documents to ACell to be stored in the ACell facility.  The Court is not persuaded.  Plaintiffs rely on a non-disclosure agreement signed by Dr. Badylak to demonstrate that he was not authorized to store the documents at the ACell facility. That document is a two page contract drafted by Cook Biotech relating to the disclosure of proprietary information in the agreement.  *See* Pl. Mem. in Opp. Ex. 5.  Two provisions of that document are relevant here – Section 1 and Section 6.  Section 1 defines the obligations of the party disclosing

"INFORMATION" and the party receiving it. That section states, "[t]he receiving party, *for 7 years after the effective date of this Agreement*, shall hold INFORMATION in confidenece. . .." *Id*. at § 1 (emphasis added). This obligation expired in 2002, prior to Badylak's departure from Purdue. *See* Pl. Mem. in Opp. at 6 ¶ 13 ("Non-Disclosure Agreement relating to TERAC 'expired' September 6, 2002). Cook Biotech attempts to overcome this "expiration" by pointing to Section 6, which states that "all obligations undertaken herein as a receiving party shall survive and continue after any termination of this Agreement." Pl. Mem. in Opp. Ex. 5 at 2. Thus, according to Cook Biotech, Badylak's duty to maintain the confidentiality of the information extends beyond the expiration of the non-disclosure agreement.

Cook Biotech's proposed construction is not persuasive. The agreement was not "terminated," but rather ran its full course. Moreover, Section 6 stands only for the proposition that any "obligation undertaken" survived termination of the agreement. But the only relevant obligation undertaken is to keep the information confidential for a period of seven years starting September 6, 1995 and ending September 6, 2002. To hold otherwise would render the express language of Section 1 meaningless. As the agreement was not controlling at the time of relinquishment, Badylak's transfer of documents to ACell was not unauthorized.

*Mens Rea Requirement*

Even if Plaintiffs could avoid summary judgment on the pecuniary harm and unauthorized control issues, their claim still fails to avoid summary judgment on the mens rea issue. As noted above, criminal intent is an essential element that must be proven in any criminal conversion action. *Summit Account and Computer Service, Inc. v. RHJ of Florida, Inc.*, 690 N.E.2d 723, 727 (Ind.Ct.App. 1998). This mens rea requirement is what "differentiates

9

criminal conversion from the more innocent breach of contract or failure to pay a debt situation that the criminal conversion statute was not intended to cover." *Sam and Mac, Inc., v. Treat*, 783 N.E.2d 760, 765 (Ind.Ct.App. 2003). *See also Gilliana*, 708 N.E.2d at 899. Indiana's criminal conversion statute includes two levels of criminal intent, "knowingly" or "intentionally," and proof of either will sustain a conviction for conversion. A person is culpable, in terms of criminal liability, for intentional conduct if, "when he engages in the conduct, it is his conscious objective to do so." Indiana Code § 35-41-2-2. "Knowingly" is the lesser level of intent, and a person engages in conduct "knowingly" if he is aware of a high probability that he is doing so." Indiana Code § 35-41-2-2. *See also Gilliana v. Paniaguas*, 708 N.E.2d 895, 899 (Ind.Ct.App. 1999).

Plaintiffs conversion claims fail on this issue. The burden to prove criminal intent is high because, as a punitive statute, the victim's relief statute must be strictly construed. *Manzon v. Stant*, 138 F.Supp.2d 1110, 1116 (S.D.Ind. 2001). In this case, Plaintiffs would be required to prove that Badylak was aware of a high probability that relinquishing control of the documents to ACell was unauthorized. Given the undisputed authority he had to possess the documents initially, and the ambiguity of the non-disclosure agreement, Badylak could not have known that simply having the materials stored at ACell's facility was unauthorized. To find otherwise would be to give the statute an expansive, rather than strict, construction.

In light of the findings made above, Defendants are entitled to summary judgment on Count V (Conversion).

*Replevin*

Pursuant to Indiana Code § 32-35-2-1, to succeed on their replevin claim

10

plaintiffs' must demonstrate that their property was "wrongfully taken or unlawfully detained." Ind. Code § 32-35-2-1. "In Indiana to prove a claim for replevin, a plaintiff must prove that he has title or right to ownership, that the property has been unlawfully detained, and that the defendant is in wrongful possession of the property." *Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc.*, 717 F. Supp. 1374, 1396-97 (S.D. Ind. 1989). *See also United Farm Family Mutual Insurance Co. v. Michalski*, 814 N.E.2d 1060, 1067 (Ct. App. Ind. 2004). "The plaintiff must prove his right to possession on the strength of his own title, not merely the weakness of the defendant's title or right to possession. " *United Farm*, 814 N.E. 2d at 1067-68. *See also Tucker v. Capital City Riggers*, 437 N.E. 2d 1048, 1051 (Ct. App. Ind. 1982) (same).

In accordance with the findings above, Plaintiffs have failed to show that the property in question has been wrongfully detained.  Therefore, Defendants are entitled to summary judgment on Count VI (Replevin).

## Conclusion

For the reasons set forth above, the Defendant's Motion for Summary Judgment on Counts V (Conversion) and VI (Replevin) is **GRANTED**. and Plaintiffs' Partial Motion for Summary Judgment on Conversion is **DENIED**.


**IT IS SO ORDERED.**

**Date: June 22, 2005**

    s/Allen Sharp
**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**