UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Cook Biotech Incorporated<br>and Purdue Research Foundation,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ACell, Incorporated,<br>Stephen F. Badylak, and<br>Alan R. Spievack<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　　4:03-CV-0046<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM, OPINION, AND ORDER**

Before this Court is Defendants', ACell, Incorporated ("ACell"), Stephen F. Badylak ("Badylak"), and Alan R. Spievack ("Spievack")(collectively "Defendants"), Motion for Summary Judgment on Count VII (Misappropriation of Trade Secrets) of the complaint of Plaintiff, Cook Biotech Incorporated ("Cook Biotech"). For the reasons stated below, the Defendant's Motion for Summary Judgment on Count VII is **GRANTED**.

**Factual Background**

Cook Biotech alleges that Defendants currently possess six binders, each of which is labeled as "Cook Biotech Confidential" or as containing "Cook Biotech" research meeting minutes. These binders allegedly contain original documents describing information belonging to Cook Biotech Incorporated. These documents (referred to as "HAR Series Cook Biotech documents" or "HAR documents") were formerly located in Defendant Badylak's office at Purdue University ("Purdue"). The HAR Series Cook Biotech Documents are presently retained at the law firm of Defendants' counsel, Harrison & Moberly in Indianapolis. Prior to their transfer to Harrison & Moberly, the HAR documents were located at ACell in Lafayette,

Indiana.

The HAR documents purportedly contain Cook Biotech research proposals relating to extracellular matrix technology, meeting minutes of Cook Biotech-sponsored research groups, and minutes of the Tissue Engineering Research Advisory Committee ("TERAC") meetings. Cook Biotech required the investigators conducting research on its behalf, including Badylak, to sign non-disclosure agreements to protect confidential and proprietary Cook Biotech information. Badylak signed such an agreement on June 6, 1995. Plaintiff's Memorandum in Opposition ("Pl. Mem. in Opp.") Ex. 5.

Approximately six months prior to Badylak's departure from Purdue, he became President of ACell Incorporated.

When Badylak left Purdue for the University of Pittsburgh, he selected documents from his Purdue office to take with him. Purdue staff boxed up the remaining materials and asked Badylak to come pick up the boxes. Sherry Ziobro, ACell's Vice President of Production, went to Purdue and picked up the boxes. Defendants later transported the boxes of Badylak's office materials from ACell to the law offices of Harrison & Moberly for Plaintiff's inspection and copying. Cook Biotech thereafter demanded that ACell return the six binders. ACell has refused to return the HAR series documents to Cook Biotech or Cook Biotech's counsel.

Also relevant to this motion are facts surrounding Dr. Badylak's tour of the Cook Biotech plant facility in 1996. This tour allowed Badylak to see the layout of the plant and the processes and equipment that were in place for making extracelluar matrix material. Prior to this tour, Badylak executed a "Confidentiality of Trade Secrets" Agreement in which he agreed not to disclose any Cook Biotech trade secrets to anyone other than Cook Biotech employees. This

agreement had no termination date.

Finally, in 1998 Dr. Tim McPherson and Purdue Research Foundation entered into an agreement whereby Purdue Research Foundation provided him with materials for McPherson to conduct research at St. Louis College of Pharmacy. The agreement specified that derivatives or new applications arising from Purdue Research Foundation's provision of the extracelluar matrix technology involved in the agreement. The agreement also required McPherson to maintain confidential any information relating to extracellular matrix technology and to provide Purdue Research Foundation with research results prior to any public disclosure.

Badylak subsequently co-authored a research article that discusses methods of preparing a powder or particulate form of extracellular matrix - the same type of technology McPherson developed in conjunction with his agreement with PRF. McPherson was not a co-author of the article, but his original work was acknowledged at the end of the article. The article indicates that it was accepted for publication on April 5, 2004 and available online June 24, 2004.

### Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir. 1998). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting

affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor.  *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir. 1998), *reh'g denied*.  A question of material fact is a question which will be outcome determinative of an issue in the case.  The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue.  *Anderson*, 477 U.S. at 248.  Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Id.*  The nonmoving party cannot rest on its pleadings, *Weicherding v. Riefel,* 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920-21 (7th Cir. 1994); nor may that party rely upon conclusory allegations in affidavits.  *Smith v. Shawnee Library* Sys., 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996).  However, the plaintiff must do more than raise a "metaphysical doubt" as to the material facts.  *Matsushita*, 475 U.S. at 577; 106 S. Ct. at 1351.  Rather, he must come forward with "specific facts" showing that there is a genuine issue for trial.  *Id.* at 587 (*quoting* FED. R. CIV. P. 56(e)).  Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue.  *Anderson*, 477 U.S. at 252-55.  Applying the above standard, this Court will now address the present motions for summary judgment in conjunction with each other.

## Analysis

Cook Biotech has asserted three separate grounds for finding that Defendants have misappropriated trade secrets: 1) Badylak improperly disclosed, and Defendants improperly acquired, documents containing Cook Biotech trade secrets; 2) Cook Biotech has a reasonable apprehension that Badylak, who has seen Cook Biotech trade secrets (during his plant tour), has disclosed, or will disclose, such trade secrets to ACell or other Cook Biotech competitors; and 3) Badylak improperly disclosed, to the detriment of Cook Biotech, trade secret technology that was invented by Dr. Tim McPherson.

Trade secret misappropriation is governed by Indiana's Uniform Trade Secret Act. Ind. Code § 24-2-3-1 *et seq*. A "trade secret" is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ind. Code § 24-2-3-2.

> "Misappropriation" is defined as
>
> (1) acquisition of a trade secret of another by a person who knows or has reason to know that trade secret was acquired by improper means; or
>
> (2) disclosure or use of a trade secret of another without express or implied consent by a person who:
> (A) used improper means to acquire knowledge of the trade secret;
>
> (B) at the time of disclosure or use, knew or had reason to know that this knowledge of the trade secret was:

>> (i) derived from or through a person who had utilized improper means to acquire it;
>
> (ii) acquired under circumstances giving rise to a duty to maintain secrecy or limit its use; or
>
> (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>
> (C) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Ind. Code § 24-2-3-2. Additionally, "improper means includes theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means. *Id*.

*Improper Acquisition and Disclosure*

Plaintiffs first assert that Badylak improperly disclosed, and Defendants improperly acquired, documents containing Cook Biotech trade secrets. Pl. Mem. in Opp. at 1. They contend that Defendants presently possess and control HAR series Cook Biotech documents which contain trade secrets belonging to Cook Biotech. According to Plaintiffs, Badylak gave these documents to ACell, who stored them at the ACell facility in Lafayette, Indiana. The documents were then given to, and are now stored at, the law offices of Harrison & Moberly in Indianapolis, Indiana.

The misappropriation, Plaintiffs allege, occurred when "Badylak decided to place the HAR Series Cook Biotech documents into the hands of Cook Biotech's competitor." They do not, however, allege that anyone at ACell reviewed the documents or ever opened the boxes containing the alleged trade secrets. They do not allege, or point to any evidence demonstrating, any actual use of the trade secrets allegedly contained in the documents. As the Plaintiffs have

6

stated in their response brief, misappropriation requires "disclosure or use of a trade secret." Ind. Code § 24-2-3-2; *Ackerman v. Kimball Int'l Inc.*, 652 N.E.2d 507, 510 (Ind. 1995) ("misappropriation of a trade secret includes disclosure or use of the secret if the secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use."). The Plaintiffs have failed to show that there is any genuine dispute over the "disclosure or use" requirement. The boxes themselves are not trade secrets, and Cook Biotech does not even attempt to allege that the confidential information contained in the documents was disclosed to anyone at ACell.

Furthermore, the confidentiality agreement upon which Cook Biotech bases the alleged duty of Badylak to maintain the secrecy of the information had expired prior to Badylak's 2002 departure from Purdue. That document, the TERAC agreement, is a two page contract drafted by Cook Biotech relating to the disclosure of proprietary information in the agreement. *See* Pl. Mem. in Opp. Ex. 5. Two provisions of that document are relevant here – Section 1 and Section 6. Section 1 defines the obligations of the party disclosing "INFORMATION" and the party receiving it. That section states, "[t]he receiving party, *for 7 years after the effective date of this Agreement*, shall hold INFORMATION in confidenece. . . ." *Id*. at § 1 (emphasis added). This obligation expired in 2002, prior to Badylak's departure from Purdue. *See* Pl. Mem. in Opp. at 6 ¶ 13 ("Non-Disclosure Agreement relating to TERAC 'expired' September 6, 2002). Cook Biotech attempts to overcome this "expiration" by pointing to Section 6, which states that "all obligations undertaken herein as a receiving party shall survive and continue after any termination of this Agreement." Pl. Mem. in Opp. Ex. 5 at 2. Thus, according to Cook Biotech, Badylak's duty to maintain the confidentiality of the information extends beyond the expiration

7

of the non-disclosure agreement.

Cook Biotech's proposed construction is not persuasive. The agreement was not "terminated," but rather ran its full course. Moreover, Section 6 stands only for the proposition that any "obligation undertaken" survived termination of the agreement. But the only relevant obligation undertaken is to keep the information confidential for a period of seven years starting September 6, 1995 and ending September 6, 2002. To hold otherwise would render the express language of Section 1 meaningless.

Because they have failed to show that any "disclosure or use" of a trade secret occurred when Badylak placed the documents in ACell's possession or that Badylak was bound by the non-disclosure agreement, Plaintiffs have failed to show any material fact dispute on this issue.

*Disclosure of Trade Secrets Relating to Cook's Manufacturing Plant*

Plaintiffs second grounds for their misappropriation claim is that they have a reasonable apprehension that Badylak will disclose trade secrets gained during his tour of their manufacturing plant in 1996. They claim that Cook Biotech "reasonably fears" that Badylak will disregard his duty to maintain the confidentiality of trade secrets obtained during his tour of the facility. Pl. Mem. in Opp. at 20. Once again, they have not referred to any evidence which suggests that any trade secrets were actually disclosed[1]. Rather, they claim that they "fear" that such disclosure will take place. The only basis they cite to support their apprehension, however,

---

[1] Plaintiffs claim that Defendants are estopped from arguing that Cook Biotech is without sufficient evidence on this issue because ACell's counsel prevented Cook Biotech from viewing or inspecting the "clean room" part of the ACell manufacturing facility, thereby depriving them of the opportunity to determine whether Cook Biotech trade secrets were used in the ACell clean room. Counsel for Plaintiffs, however, stated that they would "seek to compel further inspection if we determine that it is necessary." Pl. Mem. in Opp. Ex. 26(C) at 2. As they did not seek to compel on this issue, Plaintiffs cannot now claim that this inspection was necessary to advance their claim.

is "Badylak's failure to abide by the terms of another non-disclosure agreement (i.e., Non-Disclosure Agreement Relating to TERAC Activities) by handing over to ACell the trade secrets contained in the HAR Series Cook Biotech documents." Pl. Mem. in Opp. at 21.  As outlined above, however, the Badylak did abide by the terms of that agreement and Plaintiff has failed to show that any trade secrets were disclosed through Badylak's transfer of documents to ACell. Their reliance on this action is not sufficient to avoid summary judgment.

*Misappropriation of McPherson's Powdered ECM Invention*

The final grounds identified by Plaintiffs for their misappropriation claim is that Badylak disclosed trade secret technology relating to powdered extracellular matrix material that was invented by Dr. Tim McPherson.  They contend that McPherson's invention was a trade secret to which Cook Biotech is a third-party beneficiary.  Once again, the Court is not persuaded.

Cook Biotech's allegations regarding McPherson's involvement are at this stage of the proceedings improper.  Cook Biotech did not identify Dr. McPherson as a witness either in its initial disclosures or its interrogatory answers. *See* Ex. D attached hereto, Cook Biotech's First Revised Initial Disclosures Pursuant to Rule 26(a)(1); Ex. K to Motion, Cook Biotech's First Supplemental [Reissued] Answers to Defendant Stephen F. Badylak's First Set of Interrogatories. Its 30(b)(6) deponent on this matter did not even mention Dr. McPherson's idea as a Cook Biotech trade secret. Nor is Dr. McPherson identified as a witness with knowledge on any of Cook Biotech's initial disclosures. Cook Biotech cannot, at the last minute, and in response to summary judgment, offer an entirely new theory. *See Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1172-73 (7th Cir. 1996); *Hays v. General Elec. Co.*, 151 F.Supp.2d 1001, 1006 (N.D. Ill. 2001) ("[T]he plaintiff must commit to a theory of the case at

9

some point. . . . A change of theories at the summary judgment stage is not allowed because, ordinarily, discovery has been completed, and an eleventh hour change of theory would waste judicial resources and the resources of the parties.").

Furthermore, it appears that Dr. McPherson, and not Dr. Badylak, disclosed his "secret" to ACell.  *See* Pl. Mem. in Opp. Ex. 24 ("Per our recent discussions, ACell is interested in licensing the intellectual property you have developed. . ..").  Plaintiffs cannot claim that Badylak improperly disclosed trade secrets to ACell when McPherson himself disclosed the information.  Therefore, summary judgment in favor of Defendants must be granted.

## Conclusion

For the reasons set forth above, the Defendant's Motion for Summary Judgment on Count VII (Trade Secrets) is **GRANTED**.

**IS SO ORDERED.**

**Date: June 22, 2005**

                                              s/Allen Sharp
                                    **ALLEN SHARP, JUDGE**
                                    **UNITED STATES DISTRICT COURT**