UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Cook Biotech Incorporated<br>and Purdue Research Foundation,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>ACell, Incorporated,<br>Stephen F. Badylak, and<br>Alan R. Spievack<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>) 4:03-CV-0046<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM, OPINION, AND ORDER

Before this Court is Plaintiffs', Cook Biotech Incorporated ("Cook Biotech") and Purdue Research Foundation ("PRF")'s Motion for Summary Judgment that Dr. Stephen F. Badylak is an Inventor of Defendant ACell's U.S. Patent No. 6,576,265. This Court also has before it Defendants,' ACell Incorporated ("ACell"), Stephen F. Badylak ("Badylak"), and Alan R. Spievack ("Spievack") (collectively "Defendants") Motion for Judgment on the Pleadings or Summary Judgment of Counts I ("superior rights") and IV (unjust enrichment) of Plaintiffs' Complaint. Also before the Court is Plaintiffs' Motion for Summary Judgment on Count V (unjust enrichment) of Defendants proposed Amended Counterclaim. Finally, this Court has before it Defendants' Motion for Partial Summary Judgment of Counterclaim Counts I (rights to technology) and II (inventorship).

Plaintiffs have alleged that Badylak is an inventor of U.S. Patent No. 6,576,265 ("the '265 patent") and that he collaborated with Spievack on using the basement membrane of a pig's urinary bladder as a tissue graft composition. Plaintiffs assert that this collaborative work resulted in the filing and ultimate issuance of the '265 patent. Plaintiff's further assert that

Badylak owed Purdue a duty to assign the inventions he made while at Purdue to PRF and, because of that fact, his name was omitted from the ACell patent application.  Plaintiffs are seeking summary judgment that Badylak is a joint inventor of the '265 patent.

Defendants assert that they are entitled to judgment on the pleadings or, in the alternative, summary judgement on Counts I ("superior rights") and IV ("unjust enrichment") of Plaintiffs' Complaint.  Defendants argue that there is no recognized theory of "superior rights" in patent law and that Plaintiffs failed to state their claim for constructive trust because they failed to plead and cannot prove fraud against Plaintiffs.  In addition, Defendants assert that Plaintiffs admit that Spievack is an inventor of the '265 patent.  Since Plaintiffs cannot prove that Defendants have no rights in the '265 patent, Defendants assert that they are entitled to judgment against Plaintiffs on Count I.  Further, Defendants seek partial summary judgment on Counterclaim Counts I (rights to technology) and II (inventorship) and a declaration that Spievack is an inventor of Acell's "patent properties."

The parties have fully briefed the issues before the Court.  For the reasons stated below, Plaintiffs' Motion for Summary Judgment that Dr. Stephen F. Badylak is an Inventor of Defendant ACell's U.S. Patent No. 6,576,265 is **DENIED**.  Defendants' Motion for summary judgment on Plaintiffs' Count I ("superior rights") and Count IV (unjust enrichment) is **GRANTED**.  Plaintiffs' Motion for Summary Judgment of Count V (unjust enrichment) of Defendants' Amended Counterclaim is **GRANTED**.  Defendants' Motion for Partial Summary Judgment of Counterclaim Counts I (rights to technology) and II (inventorship) is **GRANTED** to the extent that it seeks a declaration that Spievak is an inventor of the '265 patent.

## I.  Factual Background

Dr. Alan Spievak is the named inventor of U.S. patent No. 6,576,265 ("the '265 patent") and U.S. Patent No. 6, 579,538 ("the '538 patent"). In 1999, Spievak formed ACell, Inc. ("ACell") to research and develop extracellular matrix ("ECM") technology. In late 1999, Dr. Spievak filed a provisional application on his urinary bladder matrix ("UBM") invention, which led to the issuance of the '265 and '538 patents, naming him as the sole inventor. On August 27, 2002, PRF filed an interference petition in the Patent Office, pursuant to 37 C.F.R. § 1.47(a). That petition asserted that four other individuals, in addition to Dr. Spievak, were co-inventors of the invention claimed in the '265 patent.

Spievak had developed an interest in the regenerative capabilities of "basement membrane" during the 1950s during his studies as a Fulbright scholar. He first met Dr. Badylak at a conference in early 1996, where Badylak gave a public presentation relating to small intestinal submucosa ("SIS"). Spievak had never met Badylak prior to this conference.

In March 1996, Spievak obtained and processed bladders, testing techniques for removing various layers of the bladder. In July, suffering from poison ivy, Spievak treated one leg with his bladder basement membrane invention and his other leg with calamine lotion. Spievak received positive results from this test. Spievak has stated that he had no discussions at any time between February and October 1996 with Dr. Badylak about his tests using basement membrane to treat his poison ivy.

Plaintiffs rely on the "1994 Submucosa Disclosure" in support of their inventorship claims. The disclosure is an "Invention Record and Disclosure" dated "8-17-94." The document is titled "Urinary Bladder Submucosa as a Biomaterial which Stimulates Connective Tissue Remodeling." The document lists three inventors in addition to Badylak: Sherry L. Voytik,

Andrew Brightman, and Matt Waninger.

## II. Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)*; Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir. 1998). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir. 1998), *reh'g denied*. A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riefel,* 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920-21 (7th Cir. 1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library* Sys., 60 F.3d

317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc*., 92 F.3d 560 (7th Cir. 1996). However, the plaintiff must do more than raise a "metaphysical doubt" as to the material facts. *Matsushita*, 475 U.S. at 577; 106 S. Ct. at 1351. Rather, he must come forward with "specific facts" showing that there is a genuine issue for trial. *Id.* at 587 (*quoting* FED. R. CIV. P. 56(e)). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252-55. Applying the above standard, this Court will now address the present motions for summary judgment in conjunction with each other.

### III.  Plaintiff's Motion For Summary Judgment that Dr. Badylak is an Inventor of U.S. Patent No. 6,576.265 and Defendants' Motion for Summary Judgment on Plaintiffs' Count I (Superior Rights) and Count IV (Unjust Enrichment)

Plaintiffs allege that Badylak was an inventor of the '265 patent while he worked at Purdue University and while he owed Purdue a duty to assign the inventions he made at Purdue to Purdue Research Foundation ("PRF"). Plaintiffs allege that Badylak's name is missing from the patent for this reason and that this is why Spievack, an ACell officer, is the only inventor named on the patent. Plaintiffs are seeking summary judgment that Badylak is an inventor of the '265 patent but assert that there is a question of fact as to whether Spievack is a joint inventor of the same patent. If Spievack is not a joint inventor, Plaintiffs assert that Badylak would then be the sole inventor under federal law. Alternatively, if Spievack is a joint inventor, Plaintiffs intend to establish as res judicata which contributions are attributable to Spievack, segregate those contributions, and apply for a new patent.

In order to prove inventorship, whether sole or joint, Plaintiffs must show by clear and convincing evidence that Badylak is a joint inventor with Spievack or that Badylak is the sole inventor of the '256 patent. Here, the '256 patent has been issued in Spievack's name alone. There is a presumption that the inventors named on an issued patent are correct. In *Board of Education v. American Bioscience, Inc.*, 333 F.3d 1330, 1337 (Fed.Cir. 2003), the Court stated, "[b]ecause the issuance of a patent creates a presumption that the named inventors are the true and only inventors, the burden of showing misjoinder or nonjoinder of inventors is a heavy one and must be proved by clear and convincing evidence."

### 1. Sole Inventorship

The Plaintiffs here request that this Court make a wholesale substitution of Dr. Badylak for Dr. Spievak as the sole inventor of the '265 patent. Pl. Mem. in Support at 2, 12. They failed to plead, however, that Badylak is the sole inventor of the '265 patent. Plaintiff's complaint alleges that "Plaintiffs have asserted that Defendants have omitted one or more necessary Purdue inventors from the patent properties." Docket No. 1, Compl. ¶ 57. Plaintiffs' complaint does not allege that Spievak is not a proper inventor of the '265 patent and it does not seek a remedy to remove Dr. Spievak as an inventor of the '265 patent. In interrogatory responses, PRF maintained that Dr. Badylak is not the sole inventor of the '265 patent, naming Robert Tullius, Kristina Lindberg and Nathan Huber as joint inventors who "made further inventive contributions."

Furthermore, Plaintiffs failed to make the allegation that Badylak is the sole inventor of the '265 patent in the Pre-Trial Order. Plaintiffs have included only three contentions regarding their inventorship and all three reference "omitted" inventors — *none* of them allege that Dr.

6

Badylak is the sole inventor or that Dr. Spievack is not a proper inventor. *See* Ex. 3, Pre-Trial Order at 18 ¶¶ 47-49.  Federal Rule of Civil Procedure 16(e) explains that the pre-trial order "shall control the subsequent course of the action unless modified by a subsequent order." "Since the whole purpose of Rule 16 is to clarify the real nature of the dispute at issue, a claim or theory not raised in the pretrial order should not be considered by the factfinder." *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1444 (7th Cir. 1995). Therefore, Plaintiffs are precluded from arguing that Dr. Badylak is the sole inventor of the '265 patent.

## 2.  Joint Inventorship

Under 35 U.S.C. § 116, a patented invention may be the work of two or more joint inventors.  To prove inventorship, two elements must be met: (1) conception and (2) reduction to practice.  Conception is "'the touchstone of inventorship,'" and each joint inventor must generally contribute to the conception of the invention.  *Board of Educ.,* 333 F3d. at 1337 (*quoting Burroughs Wellcome Co. v. Barr Labs, Inc*., 40 F.3d 1223, 1227-28 (Fed. Cir. 1994)).  The Court in *Board of Educ. v. American Bioscience, Inc*., went on to state, "'Conception' is the 'formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.  *Singh v. Brake,* 317 F.3d 1334, 1340 (Fed.Cir. 2003*)(quoting Kridl v. McCormick,* 105 F.3d 1446, 1449 (Fed.Cir. 1997)).   And one does not qualify as a joint inventor "merely by assisting the actual inventor.  Rather, a joint inventor must have a firm and definite idea of the claimed combination, and the idea must be sufficiently "definite and permanent," meaning that only "ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation."  *Id*. (*quoting Ethicon, Inc. v. U.S. Surgical Corp*., 135 F.3d 1456, 1460 (Fed.Cir. 1998)).

7

Priority of invention and its constituent issues of conception and reduction to practice are questions of law predicated on subsidiary factual findings. To prove inventorship, reduction to practice must also be demonstrated. This can be done in two ways: (1) actual reduction to practice and (2) constructive reduction to practice. In order to establish actual reduction to practice, the "inventor must prove that: (1) he constructed an embodiment or performed a process that met all the limitations of the interference count and (2) he determined that the invention would work for its intended purpose." *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed.Cir. 1998). Constructive reduction to practice is established when the patent application is filed.

To meet the clear and convincing burden of proof, alleged co-inventors must prove their contribution to the conception with more than their own testimony respecting the facts surrounding a claim of derivation or priority of invention. *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed.Cir. 1993). To determine whether the inventor's testimony has been sufficiently corroborated, the Court must evaluate the testimony under a "rule of reason" analysis in which all pertinent evidence must be evaluated so that "a sound determination of the credibility of the [alleged] inventor's story may be reached." *Trovan, Ltd. Cv. Sokymat SA, Inc.*, 229 F.3d 1292, 1302 (Fed.Cir. 2002) (*quoting Price*, 988 F.2d at 1195).

To cut to the chase on this issue, Plaintiffs cannot avoid summary judgment on this issue in light of the burden to prove by clear and convincing evidence that Badylak is a joint inventor of the '265 patent. As noted earlier, "[t]here is a presumption that the inventors named on an issued patent are correct, so misjoinder of inventors must be proven by clear and convincing evidence." *BJ Services Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1373 (Fed. Cir.

8

2000) (citations omitted).  That Badylak himself denies that he is an inventor of the patent creates a significant hurdle that Plaintiffs cannot overcome.

Plaintiffs must prove that Dr. Badylak had a role in the conception of the invention. Badylak, however, denies any role in the invention of the '265 patent.  Badylak denied involvement in the '265 patent invention in a pre-litigation interview with PRF.  Def. Mem. in Opp. Ex. 16 at 83-84, 116.  Dr. Badylak notified PRF that he is not an inventor of the '265 patent, and filed papers under oath with the Patent Office denying inventorship.  Def. Mem. in Opp. Ex. 12.  Dr. Badylak also testified in this litigation that he had not contemplated the possibility of using basement membrane as a product in 1994.  Def. Mem. in Opp. Ex. 18 at 148-149.

Furthermore, Plaintiffs have failed to adequately show that Badylak "contribut[ed] in some significant manner" to the conception of the '265 invention.  *BJ Services*, 338 F.3d at 1373.  In fact, the evidence demonstrates that Dr. Spievak conceived of and reduced to practice the invention in the '265 patent.  The evidence shows that Spievak recognized the importance of the basement membrane in tissue regenerative applications during his study of the basement membrane in re-growing salamander tails. Spievak learned of SIS at a public talk given by Dr. Badylak.  Def. Mem. in Opp. at 31-33.  When Spievak first suggested his idea to Badylak, Badylak admitted that he had never thought of it.  Def. Mem. in Opp. Ex. 17 at 163-165. Spievak then set out to create his own tissue regeneration composition using the special properties of the epithelial basement membrane.  Def. Mem. in Opp. Ex. 5 at 41.  He worked alone to reduce his concept to practice and the invention was complete in the summer of 1996 when he reduced his invention to practice by successfully treating his poison ivy with it.  The

9

invention of a tissue regeneration composition using epithelial basement membrane constitutes the conception and reduction to practice of the '265 patent, as confirmed by Larry S. Nixon. Def. Mem. in Opp. Ex. 19 at 18-21, 232-33.  Spievak had documented the successful healing capabilities of his invention before he met Badylak for a second time.  Def. Mem. in Opp. Ex. 5. at 43.

Given that Spievak's invention was complete in the summer of 1996, the Defendants rightly assert that any discussions he may have had with Dr. Badylak are irrelevant.  As Spievak's conception was complete by that point, Dr. Badylak could not have in any way contributed to it, as would be required to gain status as a co-inventor.  Further, Plaintiffs efforts at demonstrating contribution by Dr. Badylak before the summer of 1996 fall far short of the clear and convincing evidence required.  They ask this Court to accept the as fact the following statement: that "in 1996 Dr. Badylak and Dr. Spievak discussed the use of 'basement membrane' as a tissue graft material."  Pl. Mem. in Support at 3.  The excerpts of depositions cited by Plaintiffs in support of this statement fail to show that Badylak contributed anything to Spievak's conception of the invention, let alone that Badylak contributed "in some significant manner."

In light of the clear and convincing evidentiary standard, Plaintiffs motion for summary judgment that Badylak is an inventor of the '265 patent must be dismissed.

### 3.  Defendants' Motions for Summary Judgment on Plaintiffs Counts I and IV

The Defendants, conversely, have moved this Court to enter summary judgment in its favor and against Plaintiffs on Plaintiffs Count I, which alleges superior rights to patent properties, and Count IV, which alleges unjust enrichment.  In light of the findings above, and the failure of Plaintiffs to plead their claim for a constructive trust, Defendants motion must be

granted.

A constructive trust is not itself an independent cause of action. *Kalwitz v. Kalwitz*, 882 N.E.2d 274, 280 (Ct. App. Ind. 2005). It is "more in the nature of an equitable remedy than an independent cause of action. *Id*. Rather, "the law is firmly established that fraud, actual or constructive, is a prerequisite to the imposition of a constructive trust." *Id*.[1] Plaintiffs have failed to allege any form of fraud, either actual or constructive, in their Complaint. Therefore, Plaintiffs claim cannot be sustained and Defendants Motion for Summary Judgment on Plaintiffs' Count I must be granted.

As for Plaintiffs unjust enrichment claim, the Court finds the Plaintiffs' arguments regarding the contract counterclaims of Dr. Badylak and Spievak instructive on this point. As Plaintiffs urged there, "[t]o prevail on a claim of quantum meruit, – also referred to as unjust enrichment, contract implied-in-law, constructive contract, or quasi-contract – the plaintiff must establish that a measurable benefit has been conferred upon the defendant under such circumstances that the defendant's retention of the benefit would be unjust." *Town of New Ross v. Ferretti*, 815 N.E.2d 162, 168 (Ind. Ct. App. 2004) (citations omitted). Consequently, "when the rights of parties are controlled by an express contract, recovery cannot be based upon a theory implied in law. *Id*. (citing 6 I.L.E. *Contracts* § 5 (2000)). PRF has gone to great lengths to show that any obligations between Badylak, Spievak, and Purdue University are based on express contract, a position that has been accepted by this Court. Therefore, any rights gained by PRF must necessarily be derived from that express contract. As such, they cannot avoid

---

[1] Plaintiffs' reliance on *Brown v. Brown*, 135 N.E.2d 614 (Ind. 1956) is misplaced, as *Brown* affirmatively states that "fraud, actual or constructive, constitutes an essential ingredient of a constructive trust." *Id*. at 616.

summary judgment on their claim for unjust enrichment.  The Defendants' motion for summary judgment on Plaintiffs Count IV must be granted.

### IV. Plaintiffs' Motion for Summary Judgment on Count V (Unjust Enrichment Claims)

Plaintiffs filed a motion to strike or, in the alternative, summarily adjudicate Defendants' unjust enrichment claim, arguing that allowing the claim to go forward at this stage of the proceedings is improper.  A party who seeks relief on a claim in this Court must plead the claim in a complaint or counterclaim.  FED.R.CIV.P. 7(a), 8(a).  Plaintiffs' request for leave to do so through their proposed Amended Counterclaim was not granted.  As a result, the Court agrees that it would be highly prejudicial and unfair to PRF for Badylak and Spievak to attempt to go to trial on contentions that have never been subjected to discovery.  *See Boland v. Ill. Dept. of Mental Health and Developmental Disabilities*, 2000 WL 968817 (N.D. Ill. 2000).

Even if the Amended Counterclaim were accepted, it does not appear that the unjust enrichment claims could survive summary judgment.  This is especially true in light of the Court's resolution of closely related issues involving the contract counterclaims and the breach of fiduciary counterclaims of Badylak and Spievak.  Therefore, Defendants' unjust enrichment claims must be dismissed.

### V.  Defendants' Motion for Partial Summary Judgment on Counterclaim Count I (rights to technology) and Counterclaim Count II (inventorship)

Finally, the Court now takes up Defendants' Motion for Partial Summary Judgment on Counterclaim Count I, which asserts rights to certain patent technology, and Counterclaim Count II, which addresses the issue of inventorship.  The Court must, in the interest of candor, admit that it is less than clear about precisely what relief is being sought by the Defendants in these

counts.  This becomes even less clear in light of the Court's rejection of the Defendants' unjust enrichment claims.  The Defendants state that they seek a declaration that, at least in part, states that Dr. Spievak is an inventor of the '265 patent and that they are entitled to at least partial summary judgment on that basis.  As outlined above, there is in effect a legal presumption that Spievak is an inventor of the '265 patent because he is the named inventor of that patent.  *Board of Education v. American Bioscience, Inc.*, 333 F.3d 1330, 1337 (Fed.Cir. 2003).  In rejecting Plaintiffs' claim that Badylak is an inventor of the '265 patent, the Court has made clear that no party involved here has presented evidence sufficient to overcome such a presumption.  Therefore, to the extent that Defendants seek partial summary judgment that Spievak is an inventor of the '265 patent, that partial motion is granted.  To the extent that Defendants are requesting further declaratory relief, those requests are at this time denied.

### VI.  Conclusion

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment that Dr. Stephen F. Badylak is an Inventor of Defendant ACell's U.S. Patent No. 6,576,265 is **DENIED**.  Defendants' Motion for summary judgment on Plaintiffs' Count I ("superior rights") and Count IV (unjust enrichment) is **GRANTED**.  Plaintiffs' Motion for Summary Judgment of Count V (unjust enrichment) of Defendants' Amended Counterclaim is **GRANTED**.  Defendants' Motion for Partial Summary Judgment of Counterclaim Counts I (rights to technology) and II (inventorship) is **GRANTED** to the extent that it seeks a declaration that Spievak is an inventor of the '265 patent.

**IT IS SO ORDERED.**

**Date: June 22, 2005**

                      s/Allen Sharp
                     **ALLEN SHARP, JUDGE**
                     **UNITED STATES DISTRICT COURT**